UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED
FEB 21 2017
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| IN THE MATTER OF AN APPLICATION OF ) <br> THE UNITED STATES OF AMERICA FOR A ) <br> WARRANT AUTHORIZING THE ) <br> INSTALLATION, ACTIVATION AND ) <br> MONITORING OF A GLOBAL POSITIONING ) <br> SYSTEM ELECTRONIC TRACKING DEVICE ) <br> (GPS DEVICE) TO BE LOCATED IN OR ON ) <br> THE BLACK 2006 DODGE MAGNUM, WITH ) <br> VIN #2D8GV77306H257089, BEARING ) <br> MISSOURI LICENSE PLATE NUMBER FN1- ) <br> Z1L. ) | No. 4:17 MJ 3029 NCC <br><br> **FILED UNDER SEAL** |

## AFFIDAVIT

Christopher Moss, being duly sworn, deposes and says that he is a Task Force Officer with the Drug Enforcement Administration duly appointed according to law and acting as such.

Upon information and belief, the **Black 2006 Dodge Magnum, with Vehicle Identification Number (VIN) #2D8GV77306H257089, bearing Missouri license plate number FN1-Z1L** (hereinafter the "subject vehicle"), which is registered to Shominique O'Neal, 239 N. Floridale Avenue, St. Louis, MO 63135 and is being utilized by **Kelvin FORD**, is presently being used in a conspiracy to distribute and possess with the intent to distribute controlled substances, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

Your affiant further states that there is probable cause to believe that the installation of an electronic tracking device known as a Global Positioning System device (GPS device) placed in or on the "subject vehicle," and monitoring of the GPS device, will lead to evidence of the aforementioned offense(s), as well as to the identification of individuals who are engaged in the commission of that and related crimes.

The source of your affiant's information and the grounds for his belief are based on your affiant's personal knowledge through ongoing investigations being conducted by the Drug

1

Enforcement Administration and are as follows:

## INTRODUCTION

I am a Task Force Officer of the Drug Enforcement Administration (hereinafter DEA), United States Department of Justice (hereinafter DOJ), currently assigned to the St. Louis Division. I have been a DEA Task Force Officer since 2009. Prior to my DEA Task Force assignment, I was employed as a sworn police officer with the City of Overland for ten years. Prior to that, I was employed as a sworn police officer with the City of Kirkwood for five years.

During the course of my law enforcement experience, I have participated in numerous investigations involving controlled substances. During my tenure with the DEA, I have conducted investigations of a variety of illegal drug trafficking and money laundering organizations. I have participated in investigations which led to the seizure of illegal drugs, weapons, and assets from the sale of illegal drugs. I have also participated in the felony arrests of those individuals involved in narcotics trafficking. I have participated in numerous prior investigations involving Title III authorized wiretaps and have had specialized training from the United States Department of Justice and DEA. I have also participated in numerous drug-related training courses throughout my law enforcement career. I am familiar with and have used normal methods of investigation, including, but not limited to, visual and electronic surveillance, questioning of defendants and witnesses, the use of search and arrest warrants, the use of informants, the use of pen registers, the use of undercover agents, and the use of court-authorized wire intercepts.

## BACKGROUND

Presently, your affiant is a member of an investigative team of highly experienced DEA Special Agents and Task Force Officers who are investigating the criminal activities of Kelvin FORD who is responsible for the distribution of heroin within the St. Louis Metropolitan area. The investigation has revealed that FORD is responsible for distributing heroin in violation of Title 21,

2

United States Code, Sections 846 and 841(a)(1), and other offenses of Federal law.

Beginning in May 2016, investigators obtained information through a Confidential Source[1] (hereinafter CS#1) with the Overland Police Department that FORD was responsible for distributing heroin in the St. Louis Metropolitan area. CS#1 stated that FORD would distribute from a vehicle by meeting CS#1 at different locations in St. Louis. Additionally, CS#1 stated that FORD has directed CS#1 to the St. Louis Galleria Mall, located in Richmond Heights, Missouri. CS#1 stated he/she has observed FORD with a backpack that contained several hundred capsules of what appeared to be heroin.

## PROBABLE CAUSE

On May 25, 2016, investigators used CS#1 to conduct the controlled purchase of heroin from FORD. The CS#1 placed a recorded call to (314) 348-1873, a telephone utilized by FORD at that time. During the call, CS and FORD discussed the meet location in order to conduct the heroin transaction. FORD directed CS#1 to an alley located behind 8838 Riverview Boulevard, St. Louis, Missouri. Investigators searched the CS#1 and CS#1 vehicle prior to the purchase, and provided the CS#1 with $100 in currency that was used to purchase twenty-seven (27) capsules of heroin[i] from FORD. Investigators established surveillance of the alley prior to CS#1's arrival and observed two vehicles that appeared to also be waiting for FORD. When CS#1 arrived in the alley, he/she parked behind the other two vehicles and awaited FORD'S arrival. Shortly after, FORD arrived in the alley driving a Cadillac, bearing Missouri license FN7-Z1L. This vehicle displayed the same Missouri license FN1-Z1L, and is the same license plate currently, on the **Subject Vehicle**. The prior vehicle was also used by FORD to facilitate his drug distribution activities. The

---

[1] CS#1's information has been corroborated through physical surveillance, consensual text messages, and phone calls, either monitored or recorded by investigators between CS#1 and FORD and verified through toll analysis, and controlled purchases. The information provided by CS#1 relative to FORD has never been found to be false. CS#1 was cooperating in order to receive consideration from pending charges, but has recently ceased cooperating with law enforcement.

3

license plate for both the prior vehicle, and **Subject Vehicle,** per a law enforcement database is registered to Shominique O'Neal, 239 N. Floridale Avenue, St. Louis, MO 63135. Investigators watched as FORD conducted hand-to-hand transactions from his prior vehicle, with all three vehicles, to include the CS#1. FORD then departed the area with surveillance following FORD traveled north on highway 367, driving at an extremely slow rate of speed. FORD stopped at a red traffic signal, which upon turning green FORD remained stationary. FORD ultimately drove to a residential area and continued to drive at a low rate of speed. Based upon investigators training and experience, the investigative team believed FORD was conducting counter-surveillance or the investigative team was compromised, therefore physical surveillance was terminated.

On June 7, 2016, investigators used CS#1 to conduct a second heroin transaction. The CS#1 placed a recorded call to (314) 810-9883, a new telephone number utilized by FORD at that time. FORD instructed the CS#1 to meet him at the "circle," known to the CS#1 as in the area of Halls Ferry Circle, specifically the alley behind 8838 Riverview Boulevard, in St. Louis, Missouri. Investigators searched CS#1 and CS#1's vehicle prior to the purchase, and provided CS#1 with $100 in currency that was used to purchase twenty-seven (27) capsules of heroin[i] from FORD. Investigators established surveillance around 8838 Riverview Boulevard, the same location of the transaction that occurred on May 25, 2016, as previously described above. At approximately 12:20 p.m., CS#1 arrived and parked in the alley behind 8838 Riverview Boulevard. An unknown black male approached CS#1 and conducted the transaction that was arranged by FORD. Based upon the circumstances that FORD brokered the transaction and was not present, investigators terminated surveillance.

On September 1, 2016, investigators used CS#1 to conduct a third heroin transaction. CS#1 placed a recorded call to (314) 810-9883, the same telephone number used by FORD during the June 7, 2016 purchase. FORD directed CS#1 again to Halls Ferry Circle described above. Investigators searched CS#1 and CS#1's vehicle prior to the purchase, and provided CS#1 with

4

$100 in currency that was used to purchase an undetermined amount of capsules of heroin[i] from FORD. Investigators anticipated that the transaction would occur again in the alley behind 8838 Riverview Boulevard and established surveillance. At approximately 11:50 a.m., CS#1 arrived and parked in the alley behind 8838 Riverview Boulevard and was approached by the same unknown black male that conducted the heroin transaction on behalf of FORD on June 7, 2016. As with the prior transaction, investigators terminated surveillance since FORD was not present during the transaction.

On January 18, 2017, at approximately 1:28 p.m., CS#1 placed a series of text messages to FORD, using a new contact number for FORD of (314) 250-2907, to facilitate another heroin transaction between CS#1 and FORD. FORD did not reply to the series of text messages, however at approximately 1:31 p.m., the CS received an incoming call from FORD using the (314) 250-2907 number. Investigators overheard as the CS and FORD discussed conducting the heroin transaction wherein FORD directed the CS to the St. Louis Galleria. As previously mentioned above, CS#1 stated that on prior occasions FORD conducted heroin transactions at the St. Louis Galleria Mall, either in a public restroom on near the elevators located in the parking garage. Prior to arrival, investigators had CS#1 place a telephone call to FORD to verify where the transaction would specifically occur, and FORD directed CS#1 to "4S". CS#1 stated that "4S" is the elevator located on the 4th floor of the parking garage. Investigators searched CS#1 and CS#1's vehicle prior to the purchase, and provided CS#1 with $100 in currency that was used to purchase twenty-four (24) capsules of heroin[i] from FORD. Investigators established surveillance near the elevator both inside and outside of the mall and parking garage in an effort to observe FORD conducting the transaction. At approximately 2:14 p.m., CS#1 arrived and went to the elevator located at "4S," clearly marked as "4 South." CS#1 entered the elevator and investigators were unable to observe CS#1. CS#1 reappeared shortly thereafter, and exited the elevator on "4 South". Investigators both inside the mall and in the parking garage never observed FORD. However, CS#1 was equipped

5

with an audio and video recording device, which was reviewed by investigators. The recording device showed that upon the elevator opening, FORD was inside and greeted CS#1. FORD immediately conducted the transaction, and exited the elevator on the 3rd floor. CS#1 continued to ride the elevator until returning to the 4th floor where CS#1 exited. Following the transaction investigators established through CS#1 that FORD was in the process of conducting a second transaction near the elevators with an unknown white male with long hair. The white male was observed near an elevator by investigators, however at the time, it was unknown that this subject would be meeting with FORD to purchase heroin.

On January 30, 2017, a court order signed by the United States Magistrate Judge John M. Bodenhausen, Eastern District of Missouri, was obtained authorizing the use of pen register, trap-and trace devices, and location information on a cellular telephone used by FORD.

On February 1, 2017, investigators conducted electronic and physical surveillance of FORD. At approximately 9:35 a.m., investigators located a black Dodge Magnum, the **Subject Vehicle**, bearing Missouri license plate FN7-Z1L backed into a parking space near 7243-7249 Woodstead Court, St. Louis, Missouri 63121 (Norwood-Redfield Apartment complex). As mentioned above, the license plate on the **Subject Vehicle** is the same as previously observed by investigators on a Cadillac, a prior vehicle used by FORD. Investigators did not maintain physical surveillance of the **Subject Vehicle** at that time. At approximately 2:15 p.m., investigators established physical surveillance near 4857 Penrose, St. Louis, Missouri, and observed the **Subject Vehicle** parked in front of 4857 Penrose. At approximately 3:07 p.m., investigators observed the **Subject Vehicle** travel from Penrose to northbound Kingshighway. Investigators lost sight of the **Subject Vehicle** near Kingshighway and interstate 70. At approximately 3:50 p.m., investigators located the **Subject Vehicle** at the intersection of Chambers and W. Florissant. The **Subject Vehicle** traveled from W. Florissant to Venice Street and investigators again lost the **Subject Vehicle**. At approximately 4:16 p.m., investigators observed the **Subject Vehicle** at the Quick

Trip, located at 10768 W. Florissant Avenue, St. Louis, Missouri 63136. Investigators observed FORD get into the driver's seat of the **Subject Vehicle**, along with an unknown passenger, and depart the Quick Trip. Investigators terminated surveillance of the **Subject Vehicle**.

Investigators with DEA learned that the Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter ATF), had begun an investigation into FORD relative the purchase of two (2) firearms by Shominique O'Neal, the paramour of FORD, and registered owner of the **Subject Vehicle**. ATF believed that this was a "Straw" purchase[2] by O'Neal on behalf of FORD. FORD is a convicted felon and is unable to legally purchase or possess firearms.

On February 6, 2017, investigators with ATF conducted physical surveillance of FORD at 239 N. Floridale, St. Louis, Missouri, the address where the **Subject Vehicle** is registered, and the **Subject Vehicle** was parked in the driveway. At approximately 12:46 p.m., FORD exited the residence and got into the **Subject Vehicle,** on the driver's side, and departed the residence. FORD drove directly to the Mobil service station located at the intersection of Chambers and West Florissant and parked at a fuel pump. FORD exited the **Subject Vehicle** and briefly met with unknown subjects parked next to the **Subject Vehicle**. Investigators observed what appeared to be a drug transaction between FORD and the unknown subjects. Investigators maintained surveillance of the unknown subjects and coordinated a traffic stop. One of the individuals from the traffic stop had approximately five (5) capsules of suspected heroin on his/her possession. One of the individuals inside of the vehicle stated they had just purchased heroin from FORD at the Mobil Gas Station. Additionally, one of the individuals has known FORD for approximately six (6) months, and purchases heroin from FORD approximately three (3) times per week.[3]

---

[2] Based on my training and experience, a "Straw" purchase refers to convicted felons, like FORD, using other individuals that are non-convicted felons to purchase firearms for their use and/or possession.
[3] This individual described FORD to normally have a bag full of heroin capsules in his possession. The individual described this bag as "the size of a small pumpkin."

On February 15, 2017, investigators with DEA and ATF conducted the controlled purchase of heroin from FORD using an ATF Confidential Source (hereinafter CS#2[4]). CS#2 conducted a recorded call to FORD, who was utilizing a new cellular telephone of (314) 258-3724. FORD ceased using the cellular number of (314) 250-2907, which investigators had obtained court authorized location information for. FORD directed the CS to the apartments, whom the CS knew through prior heroin purchases from FORD would occur at the Norwood-Redfield Apartments in St. Louis, Missouri (hereinafter Apartment Complex). At approximately 10:58 a.m., investigators met with CS#2 at a neutral location and searched both CS#2 and CS#2's vehicle, which met with negative results. CS#2 was provided with a recording device and U.S. currency to conduct the heroin purchase from FORD, and was followed by investigators to the Apartment Complex. At approximately 11:13 a.m., CS#2 arrived at the Apartment Complex and parked in the rear, near building #7235. At approximately 11:23 a.m., investigators observed FORD exit building #7235 and walk over to CS#2's vehicle. Investigators observed FORD conduct a hand-to-hand transaction with CS#2. Investigators watched as FORD returned to building #7235 and used a key to enter the building. Investigators met with CS#2 at a neutral location and seized approximately thirty-eight (38) capsules of suspected heroin. Investigators with ATF were able to safely conduct a preliminary field test, which resulted in a positive test of heroin.

Investigators obtained historical information reference a prior arrest of FORD on February 4, 2016, by the St. Louis County Police Department that occurred at 239 N. Floridale Avenue, St. Louis, Missouri. It was determined the arrest stemmed from a burglary investigation, which was later determined to be FORD who had locked himself out of his residence. During a protective sweep of the residence police officers observed heroin, methamphetamine pills, capsules, capsule

---

[4] CS#2's information has been corroborated through physical surveillance, consensual text messages and phone calls, either monitored or recorded by investigators between CS#2 and FORD, and a controlled purchase. The information provided by CS#2 relative to FORD has never been found to be false. CS#2 is cooperating in order to receive consideration on behalf of pending state charges.

sealer, three cellular phones, U.S. currency, digital scales, firearm, ammunition, and other drug related material inside the residence of FORD. Police officers obtained consent from FORD to continue their search of the residence. A police database revealed that on January 23, 2017, FORD turned himself in to the St. Louis County Justice Center based upon a warrant issued in the 21st Circuit Court of Missouri from the incident described above that occurred on February 4, 2016. On the same date, FORD was processed and released on bond from the St. Louis County Justice Center.

Investigators have attempted to conduct physical and electronic surveillance of FORD on multiple occasions. The current investigation clearly shows that FORD utilizes multiple cellular phone numbers, that are changed on a frequent basis, to conduct heroin transactions.[5] Investigators attempted to use court-authorized precision location information (hereinafter PLI) of one device used by FORD, which was discarded by FORD within approximately eleven (11) days. The PLI assisted investigators to establish somewhat of a routine for FORD and current location. However, FORD was often mobile and traveling in the **Subject Vehicle** to conduct drug transactions. Therefore, investigators would arrive to the location indicated by the PLI only to find that FORD had departed the area. Having the ability to locate the **Subject Vehicle** by Global Positioning Device rather than PLI would more readily assist investigators to locate the **Subject Vehicle** and FORD in order to conduct physical surveillance.

Your affiant knows from surveillance that it will be difficult to place the GPS on the **Subject Vehicle** due to **Kelvin FORD** constantly moving from place to place though out the daytime and evening hours. When not in use, the **Subject Vehicle** is typically parked in front of **Kelvin FORD's** residence, where there is low volume traffic and within eyesight of **Kelvin FORD** and family members. Investigators have had difficulty conducting surveillance at **Kelvin**

---

[5] Based on my training and experience, this is common behavior of people involved in drug distributions to avoid location detection and tracking from law enforcement and/or other parties.

**FORD's** residence, due to the reasons mentioned and the fact that the area is known for "lookouts," referring to individuals conducting counter-police surveillance. Your affiant believes that being seen by either **Kelvin FORD** or other pedestrians in the area placing the GPS on the **Subject Vehicle** will hinder the investigation. Due to these factors, the installation, maintenance or removal of the GPS on/from the **Subject Vehicle** would be difficult to accomplish during the time period of 6:00 a.m. to 10:00 p.m. Therefore, it is requested that the time frame of authorization to install, maintain, and/or remove the GPS device include any time during the day or night.

Additionally, given the nature of the investigation described herein, agents do not believe the investigation will reasonably be concluded in the next 180 days/6 months. Any safety concerns to cooperators, undercover agents, witnesses that will not be resolved or mitigated in less than 180 days/6 months.

Your Affiant believes that it is paramount that the agents/officers of the investigative agency(ies) receive the authorization requested with this application. It is critical that the investigative team be able to monitor the movements of the **Subject Vehicle** thereby assisting in the identity of additional co-conspirators, sources of supply, and "stash houses." It is believed that tracking the movements of **Kelvin FORD** in the **Subject Vehicle** would greatly aid in this endeavor. Your Affiant further believes that the requested authorization would be a valuable asset achieving the overall goals of the investigation and assist in a successful prosecution of the members of the narcotics organization.

Based on the above information, there is probable cause to believe that the **Subject Vehicle** has and will be used to transport controlled substances, the proceeds of controlled substance sales, or in a conspiracy to distribute narcotics.

In light of the ongoing nature of the investigation and this affidavit, I request that this affidavit be sealed.

WHEREFORE, your affiant respectively requests that the Court issue a Warrant authorizing law enforcement officials, agents/officers with the Drug Enforcement Administration (the "investigative agency(ies)") and other law enforcement agents and technicians acting under the supervision of federal agents, or their authorized representatives, to install and monitor, maintain, service, repair and ultimately remove a GPS device in or on the "subject vehicle" for a period of forty-five (45) days following the issuance of the Court's Warrant, including signals produced from inside private garages and other locations not open to the public or visual surveillance, and signals produced in the event that the "subject vehicle" leaves the Eastern District of Missouri but remains within the United States, and that the notice requirements of Rule 41(d) be delayed until further notice of this Court so as not to jeopardize the ongoing investigation.

---

[1] There were not any field tests conducted on the capsules of suspected heroin recovered from any of the controlled purchases conducted with the CS#1 described above. In situations involving capsules of suspected heroin or a heroin substance suspected to be cut with fentanyl, suspected heroin was not field tested or handled by investigators for safety precautions, but was properly packaged and sent to the laboratory where analysis of the suspected heroin will be tested by a laboratory specialist in a controlled environment.

CHRISTOPHER MOSS
Task Force Officer
Drug Enforcement Administration

Dated this 21st day of February, 2017.

Sworn to and subscribed before me this 21st day of February, 2017.

NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

11